Well, today we have a trifecta, I see, among defense lawyers, familiar at least to me. I'm glad to see you all. You will be coming up seriatim. This is – the clerk has informed us that everyone has signed in. Who's supposed to sign in will dispense with the call of a calendar. And the first case on the day calendar is Rocco Costabile v. NYC Health & Hosp. Good morning, Your Honors. May it please the Court. Michael Sussman, representing the appellant Rocco Costabile. I did not handle the matter below. Mr. Costabile was pro se. Your Honors, I believe that six fairly settled propositions settle this matter. And I'd just like to briefly review what I think those are. If an employer is apprised of a disability, under the disability statute, an interactive process to ascertain whether that employee can return to work with a reasonable accommodation is required. Your case, Brady, from 2008, says that, and there are a legion of other cases which follow it. That did not occur here. Two, if an employee can perform the essential functions of his job with reasonable accommodations, he must be permitted to do so, not be terminated. Here, termination occurred, though the amended complaint averse that the gentleman could perform his essential job duties, though he could not return to work full duty, quote, unquote, full duty. Third, the employee reasonably did not submit medical evidence or a letter, as required by the August 10th, 2015 agency letter, since he was directed to do so if and only if he could return full duty, which he could not. Is there an allegation, and understanding that this is a pro se litigant. Yes, Judge. Is there an allegation that he made health and hospitals aware of the need for some form of accommodation? There is not. There is not an allegation in those terms. There is an allegation that they were aware of his disability, both his multiple sclerosis, as he pointed out previously. That's alleged in the complaint, and his current condition, and that he was supplying monthly medical records showing that. He also claims that he could perform the essential functions of the job, correct? He did indicate that, yes. Fourth, the district court held that the employee was required. I'm sorry, Judge. Let me interrupt if I may. I just want to get certain things straight. Sure. The status of the case. Your opening brief makes some arguments relating to the ADA, but the defendant's brief states that the parties have communicated and confirmed that any ADA references were inadvertent. Is that correct? I'm not sure if she's referring to the parties, Mr. Costabile and the agency or counsel. I don't recall such communication. We'll hear from her on that. All right. That's fine. I just wanted to check on that, and I'm glad I did. Let me put it another way. Are you complaining of an ADA violation? Yes, Your Honor. And as well, I think the Rehab Act, whether the ADA is or isn't in the case, I don't have a lapse of memory. I don't recall the issue being raised. But the point still is, the fourth point is that the district court held here that the employee was required to seek review. This is an exhaustion argument, as I'm sure you recall, the district court relied primarily on, by what's something called a personnel review board, but he did not seek such review. Now, my view, and this is the reason I actually took this matter, I think that that is an erroneous conclusion under either the Rehab Act or the ADA for this reason. That's what you want us to address. I do. And I want you to address it, because I think that it distorts both of those statutes and the interpretation of those statutes in a critical way. An employee shouldn't be. Is this Judge Sweet? Yes, Your Honor. I understand the situation, but it is Judge Sweet. What's the situation? I don't believe he's with us any longer. So I'm, I realize that, but I. I expect to be disagreed with long after I'm. All right. I don't mean to personalize it with regard to Judge Sweet. The district court, the problem is, first of all, if you read the. The point of my question was, are you aware of another district court that's said the same thing or held the same thing? I'm not, personally. It doesn't mean it's not, hasn't ever happened. I'm not aware of it. But what I am concerned. That would not be the first time you've dealt with that situation. Right. Exactly. The problem I have here is that if you don't go through the interactive process when the individual is employed, and I think that's what the ADA requires, and I do think it was required, as I said earlier in this case, what you end up with is a situation like that. If you look at JA30 carefully, and Judge Sweet quotes from this provision, but he doesn't quote the whole provision. The individual, quote, shall be reinstated to his or her former title if there is a vacancy to a similar or lower title. Now, that derogates the ADA and the Rehabilitation Act, because what those statutes say, particularly the ADA, is that an individual with a disability who needs an accommodation to whom that's obvious to the employer, and my argument here is from the history, that was here obvious to the employer. That triggers an interactive, sorry. I'm having, I've gone to JA30. If you look at JA30 toward the bottom of the page, Judge. Yes. The provision says if the, if he goes through this appeal, and if they find that he could be returned with or without a reasonable accommodation, quote, he shall be reinstated to his or her former title if there is a vacancy to blah, blah. And that's the provision which I'm arguing derogates the statute and is contrary to the statute. The provisions of the ADA require with respect to an existing employee the interactive process and a reasonable accommodation, not his or her termination, and then a provision which allows possibly for he or her to be reinstated only if there is, quote, a vacancy. That's not consistent with the ADA. And if one adopts that reasoning, as I say earlier, it diminishes the force and effect of statutes intended to protect the disabled. Now, there are two other brief propositions. One is, as you know, under the Rehab Act and this circuit's interpretation of it, you do need sole causation or something very close to sole causation to make out a Rehab Act violation. And that is a distinction between it and the ADA. There's a higher burden of proof upon the plaintiff appellant with regard to such a claim. The issue here, though, is that clearly that was the reason for the termination because the gentleman could not satisfy the standard of full duty, which I believe is clear from his understanding and it's clear from the distinction they make between full duty in their letter, the letter of August 10th, and their regulation, which doesn't say anything about full duty, by the way. It says, as it should say, essential functions. If that letter of August 10th had said can you do the essential functions of your job and so certify, he would have written a letter and said yes, but that's not what it did, and thereby it did not properly invoke any interactive process, as the district court said it did. It did not. Finally ---- Scalia, your view is that that communication was ambiguous or incorrect or what? That communication was not ambiguous. It was incorrect. It was not ambiguous in the sense that contextually in the amended complaint states this. He understood that correctly to mean full duty means everything that this job entails. The amended complaint goes through those things he could do, and some things, climbing ladders, climbing, which he couldn't do, which were parts of the job. It was not clear to him what was, quote, essential and what was full duty, but he knew he couldn't do full duty. Well, when you say it was not clear to him what was essential, if they had said let us know if you can do the essential functions of the job, he would have been confused based on your answer just now. No, no. He would have not been. He would not have been confused. He would have said, because he understood he could do what he understood to be. There was no definition of what the essential functions were, but he understood he could do after 14 years of the job what he thought were the essential functions, but he couldn't do everything. And when he puts that in the amended complaint, I mean, the amended complaint actually for pro se litigant is pretty detailed with regard to the ADA and rehab statute. Is there anything that excuses someone, an employee, from providing notice of the need for an accommodation? Yes. There is something that excuses it. If the court reads, which I'm sure you'll do, the Brady versus Wal-Mart decision, you'll see the line of cases which explain that the employer has an obligation which is triggered by its knowledge of the circumstances with the employee. So you can ask for a reasonable accommodation, but our circuit does not require you to ask if it's obvious that you need it. And here, given his history and what they knew, it was obvious he needed it. So, yes, there is something. And there's an explanation in detail in Brady as to when that applies. My time is up. I appreciate it. I have a further clerical question. All right. That is, are you suing the individual defendants in their personal or official capacity, or both? I didn't sue. I didn't represent below. I am prepared, because I think that it's essentially not pertinent. I was going to get to the Monell issue as my sixth point, but the time was out, to see the individual defendants. I don't think they add anything to his claim for relief. So we don't — I don't want to — they are suable under the Rehab Act, but I don't want to get to them. I don't think it matters. The state of this record is that this is a lawsuit against — The agency. — the agency and certain individuals in their official capacity. I agree. And I'm willing to leave it at that. The only other point I'd make is I think Judge Karras, in his very scholarly decision in Rutherford, explains fully why 42 U.S.C. 1983 does apply to a rehab case. There's a 1987 case of this Court which suggests as much. The issue hasn't been plumbed by this Court in the 33 years since, but I think Judge Karras's decision is a beacon on that issue. Thank you. All right. Ms. Fillo. Good morning. Mackenzie Fillo for Health and Hospitals Corporation and the other defendants. This Court should affirm because the amended complaint is defective in multiple ways. I'd first like to address the issue of the ADA. After the — if you look at JA11, it's the page of the amended complaint where there's a box to mark Americans with Disabilities Act, it is not marked. Okay? And he has no ADA claim because he did not file a timely EEOC charge. So when I saw the references to the ADA in the opening brief, I emailed my colleague here and asked him, was he in fact pursuing an ADA claim? And he responded that he was not and that it was a mistake. And he may have forgotten this. I'm happy to submit this email to the Court later or I can forward it to him just to remind him. Help us at JA11, where are we supposed to look? There's a box for — it's the form where you mark the claims that you want and you can see that ADA is not marked and Rehabilitation Act is. And even if he had marked it, it would be dismissible because, again, his EEOC claim was not timely. On to the other points. The fact that the plaintiff concedes he never requested an accommodation is fatal to his claim under this Court's decision in Williams v. NYCHA, which is post-Brady, the case that my colleague relies heavily on. In that case, the plaintiff was a tenant in a NYCHA building and I think she used a wheelchair. She had a disability for walking. And they were definitely aware of it because she had complained several times, but she had never used their established procedure to request an accommodation and this Court found that her failure to plead that she had requested an accommodation through NYCHA's established procedures meant that her complaint was defective and this Court affirmed dismissal of that complaint on that basis. What case is that again? It's called Williams v. NYCHA and we cite it in our brief. So under that case, the plaintiff's claim here is fatally defective and his concession that he never requested an accommodation means that he can't even replead to correct that deficiency. But even if he had requested an accommodation, his complaint would still be dismissible because he does not allege that he's substantially impaired. The best you can say from this complaint is that the plaintiff has a vision impairment and a lifting impairment. You do cite Williams against NYCHA, that's what, the New York City Housing Authority? Yes, that's right. That's a summary order, which is not citable as authority. Do you have anything stronger than that? Do you have a presidential opinion on that question? I believe that case does cite some presidential opinions. It cites, I'm sorry, I can't remember. There's one that starts with a T, it's very complicated to pronounce. Is that it? It cites that and it cites some, I apologize, it cites several other published cases that it's relying on, but that was the most similar fact, so that's the case that we cited. But even if, it also, as far as Brady goes, as far as the employer's obligation to instigate the conversation, that case held that that's only where a plaintiff's disability is obvious. And the plaintiff in that case was in the workplace and had cerebral palsy. Here he's out. That's right. They know something's wrong. Sure. They know that he had a back injury because that's what he went out on. They didn't know that he was disabled. Many people have impairments, but that doesn't mean you have a disability. The evidence that they knew, for example, that he had MS. They knew that he had MS, but again, everyone with MS is not disabled. Their knowledge that he... What they're saying is they didn't know that he had a qualifying disability. He had MS and worked successfully without an accommodation from 2010 to 2014. So the fact that he had MS was meaningless. It certainly did not put them on notice that he had an obvious disability triggering a requirement for the employer to ask about an accommodation, which is contrary to the usual rule. Let me ask you a question that I think is part of the reason Mr. Sussman, and he acknowledged this, took this case on. And it relates to exhaustion in the context of the Rehabilitation Act or the ADA, any of these, but let's stick to Section 504. Where is there an exhaustion requirement where the employee under the Rehabilitation Act is required to exhaust administratively through the employer? I'm not aware of that. Well, there is definitely... They have to at least ask for the accommodation. That's... Beyond that, where is the exhaustion requirement? The district court judge seems to have required more. I think we're talking about the Personnel Review Board. Yes. Yes. There is not an explicit requirement in the law. Very often, exhaustion requirements are imposed judicially. And we cited a case, it's kind of an old case, I think it's from Iowa, where they imposed this kind of a requirement. And this Court has regularly imposed exhaustion requirements where there were other available ways for the plaintiff to get what they wanted. But even if you put that exhaustion requirement aside, the plaintiff's complaint here still does not allege that he is substantially impaired. But you answered my question. There is not an exhaustion requirement, per se. There's not an explicit one in the statute itself. That's correct. When you say there's not an explicit one, the next question is, is there an implicit one? Well... Implicit outside of the context of a Federal government employee. Well, this, again, this Court in Williams held that the plaintiff was required to plead that they had used the established procedures of a governmental entity to request an accommodation. And so that is sort of an administrative exhaustion requirement, that you have to do this procedure before you can go sue. But, again, even putting any exhaustion requirement aside, he does not plausibly allege, he does not allege any facts that would show that his vision impairment is substantial. I have a vision impairment. That does not mean I'm disabled. Does he need glasses or he's blind? There are no facts in this complaint that, if true... He uses the word substantially impaired, but... That's a bald legal conclusion. Exactly. You need to allege facts that, if true, would show that he's substantially impaired. The same thing with his lifting impairment. He says he can't lift things, but can he lift 5 pounds? Can he lift 25 pounds? If he can't lift 5 pounds, he's disabled. But if he can lift 25 pounds, but just not 80, which his job requires, then he's not disabled. And, in fact, one of his proposals for an accommodation is that they let him use a back brace. If he can lift 80 pounds with a back brace, that just goes to show that he's not disabled. He does not have a substantial impairment when it comes to lifting. And, again, even putting this other problem aside, he still has another problem, which is that he cannot plausibly allege that he can perform the essential functions of the job. He concedes that he can't climb a ladder. He's a handyman, and he can't change a light bulb. If he can't see, which, assuming that he's substantially disabled, or substantially impaired with his vision, if he can't see, how's he going to put together office furniture, which he says is part of his job? There are no facts in here that, if true, would show that he can actually do the essential functions of his job. And then the last point on the Rehab Act claim is that all his proposed accommodations are either unreasonable or ineffective. Most of his proposals involve getting someone else to do his job for him, and this Court has held that that's unreasonable as a matter of law. And his other suggestions are, like, using a brace or a trolley. Those aren't going to help him climb ladders. Those aren't going to help him. They have nothing to do with vision. He hasn't proposed any accommodation that would let him see, if he can't see, or that would, you know, address his inability to see. An accommodation, to be reasonable and effective, it has to address the barrier that the person has, which prevents them from doing their job. And none of his proposed accommodations have that here. Are you familiar with Natofsky v. City of New York? Not. The sole cause issue? Yes, but I don't, it's not that clear to me that he's alleging that there was some other reason for his termination. As to the 1983 claim, we cited all these cases in our brief showing that the Rehabilitation Act is not enforceable through 1983. Seven other circuit courts have held that. And while this Court has never addressed it, the reasoning of those cases is sound. The Rehabilitation Act has its own enforcement mechanism, and there's no reason to then add a 1983 claim. It's completely duplicative, and it, therefore, fails for the same reason that his Rehabilitation Act claims fails. And his complaint also does not allege that the hospital system has a policy of refusing to accommodate people. While he got this letter, this letter is not from a final decision-maker, and its vague reference to full duty is insufficient, where he concedes that one of his colleagues was allowed to go back to work on light duty. So he knows there's no policy about full duty. So he hasn't, at best... So your view is that we could assign error, for example, to the district court's determination that he was required to appeal and exhaust that way, but the plaintiff here still loses, based on the allegations, the bare-knuckle pro se allegations. Yes, that's exactly right. And I would... I'm skeptical that this complaint was written by the plaintiff. If you look at his initial complaint, and then you look at this complaint, they're dramatically different. There's no way they were written by the same person. So I'm skeptical that this was really a pro se complaint. But putting that aside and giving it every benefit of the doubt, it still does not state a claim. Thanks very much. Thank you. Williams is not an employment case, and there is no employment case that I'm aware of that does hold, as counsel suggests. I believe in the employment sphere, the Brady case still is good law, and it ought to be good law, because where you have... And it's a statutory construct, and that's why it's good law. It properly interprets the statute. Where you have an individual who it is obvious to the employer, and I don't agree with counsel's formulation that a gentleman who's been out of work for 14 months, who by the complaint is submitted each month, periodic updates with regard to his employment status and the nature of his back problems, it is not obvious to that employer that the individual is in fact disabled under the statute. It makes no sense. That provision clearly, that requirement that's being enforced upon the employee is intended to give them notices to the nature of his injury, and in this case it did just that. So I don't think that point has any validity. I think that here, his complaint adequately states that he was unable to comply with a full duty requirement which was imposed by the agency in its letter. The complaint also indicates he could do the essential functions of the job. And remember, this is a motion to dismiss the facts that would be taken most liberally toward him, even if, whether he's pro se or not. I don't know if there was an attorney involved. No one came to me to take the case. He did. The point is, on a motion to dismiss, what counsel seems to me to be doing is drawing every inference against him rather than in his favor. If you construe the complaint most favorably to him, what you get is an individual who could perform essential job functions. She says, well, he couldn't climb a ladder. He says in the complaint they worked in groups of five people. So if he couldn't do something, someone else who was more able-bodied could, and there were things he could do. So the argument that they didn't have, quote, light duty is also integral to this case. He's saying they need to do it. Breyer. Isn't it an accommodation that someone else can do it? Sotomayor. It's an accommodation if you work in teams. Breyer. Isn't it something that we've recognized as an accommodation under any of these acts? Sotomayor. Yes, I believe you have recognized it as an accommodation. Where you have people who work in teams and one person is disabled and cannot do a function, and other members of the team can do that function, it makes sense to understand that as a reasonable accommodation. Why wouldn't it be? That's better than a, quote, light duty which takes him off a team and gives him some make-work job which is not integrally related to the job function. Mr. Sussman. Sorry. On the 1983 question, your opposing counsel has drawn our attention to the fact that various sister circuits have quite firmly held that there is no cause of action under 1983 to enforce the Rehabilitation Act. Are you aware of any authority otherwise? As I point out in my brief, there is a 1987 case by this Court which assesses it, and there's also, as I noted, a district court decision by a scholarly district court judge who does go through the authorities in this circuit and otherwise. And it is his decision in the Rutherford case, which is about three months, four months old. It's a recent case and goes through the authorities and I think makes a cogent argument as to why that provision should apply. I'm not sure it's decisive here because there's jurisdiction independently in Rehab Act cases anyhow. Okay. Thanks very much, Mr. Sussman. Thank you very much. We're grateful for the argument of both of you. Very well argued. And we turn to the United States for a vote.